WINDOM, Judge.
Brandon Deon Mitchell appeals his four capital-murder convictions and his sentences of death. Mitchell was convicted of three counts of capital murder for taking the lives of Kim Olney, John Aylesworth, *977 and Dorothy Smith during the course of a robbery. § 13A-5-40(a)(2), Ala.Code 1975. He was also convicted of an additional count of capital murder because two or more people were murdered by one act or pursuant to one scheme or course of conduct. § 13A-5-40(a)(10), Ala.Code 1975. After the penalty phase of Mitchell’s trial, the jury recommended, by a vote of 10-2, that he be sentenced to life in prison without the possibility of parole. The circuit court then ordered and received a presentence report. After holding a sentencing hearing, the circuit court overrode the jury’s recommendation and sentenced Mitchell to death on all four counts.
At trial, the State presented evidence indicating that on November 24, 2005, Thanksgiving Day, Mitchell went to Jonathan Floyd’s apartment where Roderick Byrd and his sister, Hellena, were staying. Mitchell entered the apartment to discuss his plan to rob the Airport Inn in Birmingham (hereinafter “the Inn”) with Byrd. After Byrd agreed to help with the robbery, Mitchell asked Floyd to take them to the Inn. Floyd drove Mitchell and Byrd to the Inn around 2:50 p.m. When Floyd let them out of the car, Mitchell was wearing a white sweatshirt and jeans and Byrd was dressed in all black. After letting Mitchell and Byrd out of the car, Floyd left to visit his “god-sister.”
Mitchell and Byrd entered the Inn where they encountered Kim Olney, the desk clerk, and John Aylesworth, a truck driver who was waiting in the lobby for a ride to Texas where he lived. Both Mitchell and Byrd were armed with pistols. Mitchell immediately focused his attention on Olney, who was behind the front desk, while Byrd used his gun to subdue Ayles-worth, a former Marine. At some point during the robbery, Dorothy Smith, who was traveling back to New York after visiting her son in Alabama for Thanksgiving, entered the hotel lobby and was also held at gunpoint. During the robbery, Mitchell took money from a cash drawer and unsuccessfully attempted to open a safe located behind the front desk. Mitchell and Byrd also took various items from the three victims, including duffel bags, clothing, and money, before shooting each of them behind the ear at close range with .38-caliber pistols.
A video from the lobby security camera shows Mitchell shooting Olney twice, once in the arm and once in the head. Forensic testing of the projectiles recovered from the scene and from the victims’ bodies established that Olney and Smith were shot with the same .38-caliber pistol and that Aylesworth was shot with a different .38-caliber pistol. The Jefferson County Medical Examiner testified that all three victims died as a result of a gunshot wound to the head.
After the robbery, Mitchell and Byrd fled the scene on foot. They traveled around the Inn and jumped over a fence located behind the Inn, which separated the Inn from a neighborhood. Clifford James and James Jackson, who were sitting on the back porch of one of the houses behind the Inn, saw Mitchell and Byrd, who were carrying several bags, climb the fence and walk off in different directions. James and Jackson were not able to positively identify the individuals they saw climbing the fence, but they testified that one of the men was wearing all black and was carrying a book bag and the other man had lighter skin and was wearing light-colored clothing.
After Mitchell and Byrd separated, Mitchell telephoned Floyd and asked Floyd to pick him up on First Avenue. Floyd met Mitchell on First Avenue and took Mitchell to Mitchell’s “god-sister’s” house, which was three blocks from *978 Floyd’s apartment. During the ride, Mitchell, who was carrying a blue tote bag, told Floyd that he had “just hit a lick.” (R. 891.) After dropping Mitchell off, Floyd went back to look for Byrd. Floyd later returned to his apartment where he found Byrd and Mitchell. Byrd appeared nervous and was shaking and crying. At some point, Mitchell removed his clothing and placed the clothing in the dumpster behind Floyd’s apartment. Mitchell later told Floyd that he had killed three people by shooting them behind the ear.
Later that evening, Mitchell contacted his friend Warika Gunn and asked her for a ride to the bus station in Huntsville. Gunn, who had seen Mitchell’s photograph on the news in connection with the shootings at the Inn, telephoned “Crimestop-pers,” an anonymous tip hotline. Mitchell later admitted that he was wanted by the police in connection with a robbery. While in contact with the authorities, Gunn agreed to meet Mitchell in Fairfield at 10:00 p.m. However, Mitchell was subsequently arrested before he could meet Gunn at the arranged location.
At trial, Robert Baxton, a friend of Mitchell’s, and James Floyd III, Jonathan Floyd’s nephew, testified that they had recognized Mitchell’s photograph on a news report and that Mitchell had told them that he had been involved in the hotel shootings.

Standard of Review

Because Mitchell has been sentenced to death, according to Rule 45A, Ala. R.App. P., this Court must search the record for “plain error.” Rule 45A states:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
(Emphasis added.)
 In Ex parte Brown, 11 So.3d 933 (Ala.2008), the Alabama Supreme Court explained:
“ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.” ’ Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002) (quoting Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998)). In United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court, construing the federal plain-error rule, stated:
“ ‘The Rule authorizes the Courts of Appeals to correct only “particularly egregious errors,” United States v. Frady, 456 U.S. 152, 163 (1982), those errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings,” United States v. Atkinson, 297 U.S. [157], at 160 [ (1936) ]. In other words, the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.” United States v. Frady, 456 U.S., at 163, n. 14.’
“See also Ex parte Hodges, 856 So.2d 936, 947-48 (Ala.2003) (recognizing that plain error exists only if failure to recognize the error would ‘seriously affect the fairness or integrity of the judicial proceedings,’ and that the plain-error doctrine is to be ‘used sparingly, solely in those circumstances in which a miscar *979 riage of justice would otherwise result’ (internal quotation marks omitted)).”
11 So.3d at 938. “The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly-raised in the trial court or on appeal.” Hall v. State, 820 So.2d 113, 121 (Ala.Crim.App.1999). Although Mitchell’s failure to object at trial will not bar this Court from reviewing any issue, it will weigh against any claim of prejudice. See Dill v. State, 600 So.2d 343 (Ala.Crim.App.1991).
I.
Mitchell first argues that numerous instances of prosecutorial misconduct occurred during the State’s guilt-phase closing arguments and that he was thereby deprived of a fair trial. Specifically, he contends that the prosecutor, during the guilt-phase closing arguments, improperly commented on Mitchell’s failure to testify, injected victim-impact evidence, and invoked religion. (Mitchell’s brief, at 7.) Mitchell, however, failed to first present these arguments to the circuit court. Therefore, this Court will review them for plain error. See Rule 45A, Ala. R.App. P.
“In judging a prosecutor’s closing argument, the standard is whether the argument ‘ “ ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ” ’ ” Sneed v. State, 1 So.3d 104, 138 (Ala.Crim.App.2007) (quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), quoting in turn Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). In Ex parte Windsor, the Alabama Supreme Court held:
“ ‘ “While th[e] failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.” Ex parte Kennedy, 472 So.2d [1106,] at 1111 [ (Ala.1985) ] (emphasis in original). “This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.” Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). “Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.” United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also Biddie v. State, 516 So.2d 837, 843 (Ala.Cr.App.1986), reversed on other grounds, 516 So.2d 846 (Ala.1987).’”
683 So.2d 1042, 1061 (Ala.1996) (quoting Kuenzel v. State, 577 So.2d 474, 489 (Ala.Crim.App.1990)).
A.
Mitchell initially argues that the prosecutor repeatedly commented on his failure to testify during the guilt phase. During the State’s rebuttal to the defense’s closing arguments, the prosecutor made the following statement: “No gun. We don’t have a gun. Where is the gun? I don’t know. He knows. He knows were the gun is.” (R. 1014.) According to Mitchell, the prosecutor’s comment referenced Mitchell’s failure to testify. Mitchell also asserts that the prosecutor commented on his failure to testify when, after playing a recording of a conversation Mitchell had had on the jail telephone system, the prosecutor stated that “[h]e *980 just told you who was the driver.” (Mitchell’s brief, at 11.) Finally, Mitchell argues that the prosecutor commented on his failure to testify when he stated that “[t]here’s some things that [the defense counsel] can’t even try to explain to you and try to come up with a reason for it.” (Mitchell’s brief, at 10.) Mitchell did not object to these comments; therefore, they are reviewed for plain error only. Rule 45A, Ala. RApp. P.
In Ex parte Brooks, the Alabama Supreme Court explained:
“Comments by a prosecutor on a defendant’s failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant’s constitutional right not to testify. Whitt [v. State, 370 So.2d 736, 739 (Ala.1979) ]; Ex parte Williams, 461 So.2d 852, 853 (Ala.1984); see Ex parte Purser, 607 So.2d 301 (Ala.1992).... Under federal law, a comment is improper if it was ‘ “ ‘manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.’ ” ’ United States v. Herring, 955 F.2d 703, 709 (11th Cir.), cert. denied, 506 U.S. 927, 113 S.Ct. 353, 121 L.Ed.2d 267 (1992) (citations omitted); Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984). The federal courts characterize comments as either direct or indirect, and, in either case, hold that an improper comment may not always mandate reversal.”
Gavin v. State, 891 So.2d 907, 981 (Ala.Crim.App.2003) (quoting Ex parte Brooks, 695 So.2d 184, 188).
To the extent Mitchell asserts that the prosecutor commented on his failure to testify when the prosecutor stated that Mitchell knew where the murder weapon was located, this argument is without merit. Contrary to Mitchell’s assertion, the prosecutor’s comments were not made in an attempt to draw attention to the fact that Mitchell had not testified. Instead, the prosecutor was simply responding to defense counsel’s argument that the State had failed to meet its burden of proof because it had not produced the murder weapons. Cf. Ballard v. State, 767 So.2d 1123, 1135 (Ala.Crim.App.1999) (“A prosecutor has a right to reply in kind to the argument of defense counsel. This ‘reply-in-kind’ doctrine is based on fundamental fairness.”); Harris v. State, 2 So.3d 880, 920 (Ala.Crim.App.2007) (same); Brown v. State, 11 So.3d 866, 903 (Ala.Crim.App.2007) (“Where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment.”) (citations and quotations omitted). Reviewed in context, this statement was “not manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.” Gavin, 891 So.2d at 981. On the contrary, this comment simply relayed the message that law enforcement had not recovered the murder weapons because Mitchell had disposed of them. Consequently, the prosecutor did not improperly comment on Mitchell’s failure to testify.
Similarly, the prosecutor’s statement that “[t]here’s some things that [the defense counsel] can’t even try to explain to you and try to come up with a reason for it,” was not a comment on Mitchell’s failure to testify. (Mitchell’s brief, at 10.) It is well settled that “it is not error ‘to comment on the failure of the defense, as *981 opposed to the defendant, to counter or explain the evidence.’” United States v. Griggs, 735 F.2d 1318, 1321 (11th Cir.1984) (quoting United States v. Bright, 630 F.2d 804, 825 (5th Cir.1980)) (emphasis in original). Here, the prosecutor was merely commenting, in rebuttal, that defense counsel had failed to explain away evidence that clearly implicated Mitchell in the crime. See Belisle v. State, 11 So.3d 256, 305 (Ala.Crim.App.2007) (holding that a prosecutor may argue that the State’s evidence is uncontroverted). Because the comment was directed at defense counsel’s failure during closing arguments to address several key pieces of evidence that tended to suggest that their client was guilty, it was not a reference to Mitchell’s failure to testify.
Finally, the prosecutor’s comment that “[Mitchell] just told you who was the driver,” was not a comment on his failure to testify. (Mitchell’s brief, at 11.) During his closing argument, the prosecutor played a recording of Mitchell that was recorded while Mitchell was in jail, and then stated, “[Mitchell] just told you who was the driver.” (Mitchell’s brief, at 11.) The record establishes that the prosecutor was commenting on Mitchell’s recorded conversation, not on his failure to testify. Therefore, this argument is without merit.
B.
Mitchell next argues that during the guilt phase of the trial, the prosecutor improperly argued victim-impact evidence and improperly compared the victims’ rights to Mitchell’s rights. Mitchell did not object to the prosecutor’s comments at trial; therefore, this issue is reviewed for plain error only. Rule 45A, Ala. R.App. P.
During his closing arguments, the prosecutor made the following arguments:
“We talk about rights. Defense talks about rights. Well, imagine Kim Olney had a right. She had a right to go to work and provide for her family. She had a right to live for her kids. Her family had a right to be able to enjoy Thanksgiving this year with their daughter. He took that right away. He took it away. Yes, he took that right away.
“Talk about rights? Dorothy Smith had a right to come to Alabama where she’s from before she moved to New York to visit her son. She had a right to do that. It’s her business. She had a right because she had to have to leave early that morning to check into that hotel. She had a right to choose whatever hotel she wanted to. She worked hard for her money. She had a right to do that. Picked the wrong hotel. And he took her away. She won’t be celebrating Thanksgiving this year with her son. She won’t be visiting Alabama anymore. She made the mistake of visiting Alabama where Brandon Mitchell resides, coming into his territory. Cost her her life and she was executed.
“Talk about rights? John Aylesworth had a right to be with his wife who is out here. He was minding his own business. He had a right to provide for his family. He drove his truck through the State of Alabama, through Birmingham, and had truck problems. Unfortunately for him, he had truck problems in Birmingham when his truck stopped. And he had a right to check in that hotel and wait for his truck to be repaired so he can get home to his family. He had a right also. But you- know what? This man here (indicating) took that right away from him also. Took that right away.”
“Now, I agree this was not pleasant. This was not a pleasant trial. It was not. And I’m going to end it. But you know, I agree with the fact that this was *982 a horrible, horrible crime. Absolutely. And it changed the lives of those family members forever. Forever. Thanksgiving, ladies and gentlemen, is seven days, if my math is correct, away. Seven days away. It changed their lives forever.
“And you know, right now the very next time that the family members think of Kim Olney, they are going to think of what they saw here. This is what they are going to think of. This is exactly what they are going to think of right here (indicating), ladies and gentlemen. I can’t get it right, but that’s what they are going to think of. That’s what they are going to think of. That’s his work. That’s his work product. When they think of Dorothy Smith, this is what they are going to think of right here (indicating). That’s his work. That’s his work. When they think of John Aylesworth, that’s what they are going to remember (indicating). That’s his work, his.
“He sits there today. He sits there and he left a trail of destruction behind. Brandon Mitchell, seated at that table over there, and he was identified by several witnesses. That’s the Brandon Mitchell that /all have been focusing on all week. I want you to remember something. I want you to remember that his family is out here. I want you to remember that they are also here. I want you to remember that they are here and they have been here all week just like he has all week. But that’s not the Brandon Mitchell that you really know. That’s not the Brandon Mitchell. This is (indicating). That’s Brandon Mitchell’s work, ladies and gentlemen, right there, right there (indicating). He tried to walk away from that scene. He’s charged, ladies and gentlemen, with four counts of capital murder. Four. He is guilty of all four counts of capital murder.”
(R. 1011-12,1018-19.)
In Ex parte Rieber, the Alabama Supreme Court addressed a similar situation holding:
“[T]he aforementioned portions of [the prosecutor’s argument], although they should not have been permitted, did not operate to deny Rieber a fair trial. It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that Rieber did not receive a fair trial simply because the jurors were told what they probably had already suspected — that [the victim] was not a ‘human island,’ but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents.”
663 So.2d 999, 1006 (Ala.1995) (paraphrasing a portion of Justice Souter’s opinion concurring in the judgment in Payne v. Tennessee, 501 U.S. 808, 838, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).
In Frazier v. State, 758 So.2d 577, 602-04 (Ala.Crim.App.1999), this Court addressed an argument nearly identical to Mitchell’s and held that the prosecutor’s comments did not constitute plain error. In Frazier, the prosecutor made the following statements in argument: 1) the murders occurred during the week of Thanksgiving; 2) the 40-year-old victim was in the prime of her life; 3) the victim had successfully raised 2 daughters; 4) the victim was about to become a grandmother for the first time; and 5) the victim would never get to see her grandbaby because the defendant “got tired of listening to [her] beg.” Id. This Court determined that the prosecutor’s comments did not rise to the level of plain error because there was overwhelming evidence of guilt *983 and because the jurors were instructed that the arguments of counsel were not to be considered as evidence, their verdict must be based strictly on the evidence, and they could not find the appellant guilty unless the prosecution proved its case beyond a reasonable doubt. Id. at 604.
Similarly, the State presented overwhelming evidence of Mitchell’s guilt, including a video showing Mitchell murdering Olney. The circuit court instructed the jurors that in “deciding the guilt or innocence of the defendant, you are confined to the evidence” and should not consider “prejudice, sympathy, compassion, or any other emotion.” (R. 1029.) See Frazier, 758 So.2d at 604 (“The jurors were instructed several times that the arguments of counsel were not to be considered as evidence. In addition, they were instructed that they should base their verdict strictly on the evidence, and that they could not find the appellant guilty unless the prosecution proved its ease beyond a reasonable doubt. ‘The jury is presumed to follow the instructions given by the trial court.’ ” (quoting Hutcherson v. State, 727 So.2d 846, 854 (Ala.Crim.App.1997), citing in turn Taylor v. State, 666 So.2d 36 (Ala.Crim.App.), opinion extended on remand, 666 So.2d 71 (Ala.Crim.App.1994))). Based on these circumstances, any error in the prosecutor’s argument did not rise to the level of plain error. See Ex parte Rieber, 663 So.2d at 1006; Frazier, 758 So.2d at 602-04. Therefore, this issue does not entitle Mitchell to any relief.
C.
Finally, Mitchell contends that the prosecutor “improperly wove a religious theme into its Thanksgiving argument.” (Mitchell’s brief, at 16.) During the final portion of the State’s guilt-phase closing arguments, the prosecutor stated: “On the very day that should be a day that we should be giving thanks for God’s bountiful blessings to all of us, that families ought to be together, he wants to do a lick.” (R. 998-99.) According to Mitchell, this comment improperly invoked religion in violation of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Mitchell did not object to this comment; therefore, this Court will review it for plain error only. Rule 45A, Aia. RApp. P.
Not all references in a criminal prosecution to God, religion, or the Bible are impermissible. See Ivery v. State, 686 So.2d 495, 511 (Ala.Crim.App.1996) (holding that the prosecutor’s reference to God’s law was not improper); Poole v. State, 292 Ala. 590, 591, 298 So.2d 89, 90 (1974) (holding that the prosecutor’s comment — “I want you to think about this and use your common sense. Judas was a man of good reputation immediately before betraying Christ” — was not improper). “Argument of counsel should not be so restricted as to prevent reference, by way of illustration, to historical facts and public characters, or to principles of divine law or biblical teachings.” Wright v. State, 279 Ala. 543, 550-551, 188 So.2d 272, 279 (1966) (citation omitted). Generally, a prosecutor’s reference to religion, God, or the Bible is improper if that reference urges the jury to abandon its duty to follow the law or to decide the case on an improper basis. Compare Williams v. State, 710 So.2d 1276, 1301 (Ala.Crim.App.1996) (holding that references to religion that illustrate a point as opposed to urging the jury to abandon its duty to follow the law are not improper), with Romine v. Head, 253 F.3d 1349, 1358 (11th Cir.2001) (holding that the “prosecutor [improperly] argued Biblical law to the jury as a basis for urging it to eschew any consideration of mercy and sentence Romine to death”). *984 On the other hand, a prosecutor’s reference to God or Biblical figures that is merely descriptive or illustrative is not improper. See Poole, 292 Ala. at 591, 298 So.2d at 90 (holding that the prosecutor’s comment — “I want you to think about this and use your common sense. Judas was a man of good reputation immediately before betraying Christ,” — was not improper); Wright v. State, 279 Ala. at 550-551, 188 So.2d at 279; Williams v. State, 710 So.2d at 1301.
Here, the prosecutor’s reference to “a day that we should be giving thanks for God’s bountiful blessings” merely described the day the murders occurred, Thanksgiving. Contrary to Mitchell’s assertion, the prosecutor’s comment was isolated, and it did not urge the jury to “abandon its duty to follow the law.” Williams, 710 So.2d at 1301. Nor did the State’s reference to Thanksgiving as “a day that we should be giving thanks for God’s bountiful blessings” intimate to the jury that “the Bible ... command[s] that [Mitchell] be put to death.” (Mitchell’s brief, at 16.) Instead, the prosecutor’s reference merely illustrated the day the murders occurred and thus was not improper. Wright, 279 Ala. at 550-551, 188 So.2d at 279.
Moreover, even if the prosecutor’s comment was improper, it would not rise to the level of plain error. “Isolated, or ambiguous or unintentional remarks must be viewed with lenity, and a brief remark is less likely to cause prejudice.” Romine, 253 F.3d at 1369 (citations and quotations omitted). See also Johnson v. State, [Ms. CR-99-1349, Oct. 2, 2009] _ So.3d _, _ (Ala.Crim.App.2005) (opinion on remand from the Alabama Supreme Court) (recognizing that an isolated, improper comment is less likely to be prejudicial). Here, the prosecutor’s comment was isolated and thus less likely to result in prejudice. Further, as described above, the State presented overwhelming evidence of Mitchell’s guilt, and the circuit court properly instructed the jurors that in “deciding the guilt or innocence of the defendant, you are confined to the evidence” and should not consider “prejudice, sympathy, compassion, or any other emotion.” (R. 1029.) With overwhelming evidence of guilt and proper instructions from the court, the prosecutor’s comment, “when viewed in the context of the entire closing argument and in the context of the entire trial, [did not] undermine[ ] the fundamental fairness of the trial,” Ex parte Parker, 610 So.2d 1181, 1183 (Ala.1992), and therefore did not rise to the level of plain error. Rule 45A, Ala. R.App. P.
II.
Mitchell next argues that the circuit court erroneously failed to instruct the jury on lesser-included offenses. Specifically, he contends that because the jury was not afforded the option of convicting him on a lesser-included offense, the imposition of the death penalty in this case is both arbitrary and capricious. Mitchell did not raise this argument to the circuit court; therefore, this Court will review it for plain error only. See Rule 45A, Ala. R.App. P.
Relying on Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), Mitchell argues that the failure to instruct the jury on lesser-included offenses rendered his death sentence unconstitutional because it denied the jury a third option, i.e., convicting him of a non-capital offense. Rejecting a similar argument in Maples v. Allen, 586 F.3d 879, 893-94 (11th Cir.2009), the United States Court of Appeals for the Eleventh Circuit held:
“Maples relies primarily on Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), but Beck is completely inapposite because it involved an *985 all-or-nothing statute no longer extant. In the 1970s, Beck was convicted of capital murder. In Beck, the Supreme Court invalidated an Alabama statute that absolutely prohibited in capital cases the charging of all non-capital lesser included offenses. Although the evidence warranted such an instruction in Beck’s case, the Alabama jury was given the choice only of (1) convicting Beck of the capital offense, for which the jury must impose the death penalty, or (2) setting him free. Beck, 447 U.S. at 628-30, 100 S.Ct. at 2385-86. The Supreme Court held Alabama’s all-or-nothing statute was unconstitutional because the absolute preclusion in a capital case of a lesser included offense, when the evidence supported it, violated procedural due process. See Beck, 447 U.S. at 627, 100 S.Ct. at 2384 (overturning death penalty where jury ‘was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict’); cf. Hopper v. Evans, 456 U.S. 605, 610-14, 102 S.Ct. 2049, 2052-54, 72 L.Ed.2d 367 (1982) (upholding death sentence even though jury was instructed on only capital offense under Alabama’s preclusion statute, because the evidence did not support a lesser included offense charge and defendant was thus not prejudiced by preclusion statute)_ [A] lesser included non-capital offense instruction is warranted!, however,] only when the evidence supports such an instruction.”
(emphasis added). Similarly, this Court has held that “ ‘[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.’ Alabama Code 1975, § 13A-l-9(b) (emphasis added).” Bell v. State, 518 So.2d 840, 842 (Ala.Crim.App.1987); see also Ex parte Myers, 699 So.2d 1285, 1291 (Ala.1997) (“A charge on a lesser, non-capital offense is required only when there is a basis in the evidence which provides a reasonable theory supportive of the charge.”) (citations and internal quotations omitted).
Based on the evidence presented at trial and on Mitchell’s failure to offer any theories in support of a charge on a lesser-included offense, there was no rational basis to support such an instruction. See Welch v. State, 630 So.2d 145, 146 (Ala.Crim.App.1993) (“ ‘When the evidence clearly shows that the appellant is either guilty of the offense charged, or innocent, the charge on a lesser-included offense is not necessary or proper.’ ” (quoting Hollins v. State, 415 So.2d 1249, 1253 (Ala.Crim.App.1982))). The evidence established that three murders were committed during the course of a robbery, and there was no evidence to indicate otherwise. Therefore, the circuit court properly refused to instruct the jury on lesser-included offenses.
III.
Mitchell next argues that the circuit court erroneously found that the murders were especially heinous, atrocious, or cruel when compared to other capital murders. See § 13A-5-49(8), Ala.Code 1975. Specifically, Mitchell argues that the State presented insufficient evidence to establish that the triple murder was especially heinous, atrocious, or cruel. Mitchell further argues that a comparative analysis of the facts of his crime with those in other cases establishes that the especially heinous, atrocious, or cruel aggravating circumstance is inapplicable.[1] This Court disagrees.
*986 “In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution.” Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993) (citing Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978)). The especially heinous, atrocious, or cruel aggravating circumstance “applies] to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.” Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981) (citing State v. Dixon, 283 So.2d 1 (Fla.1973)).
“ ‘There are three factors generally recognized as indicating that a capital offense is especially heinous, atrocious, or cruel: (1) the infliction on the victim of physical violence beyond that necessary or sufficient to cause death; (2) appreciable suffering by the victim after the assault that ultimately resulted in death; and (3) the infliction of psychological torture on the victim.’ ”
Saunders v. State, 10 So.3d 53, 108 (Ala.Crim.App.2007) (quoting Brooks v. State, 973 So.2d 380, 417-18 (Ala.Crim.App.2007), citing in turn Norris v. State, 793 So.2d 847 (Ala.Crim.App.1999)).
Under the first factor, “the time between at least some of the injurious acts must be an appreciable lapse of time, sufficient enough to cause prolonged suffering, and (2) the victim must be conscious or aware when at least some of the additional or repeated violence is inflicted.” Norris, 793 So.2d at 854. This Court has held that “[w]hen a defendant deliberately shoots a victim in the head in a calculated fashion, after the victim has already been rendered helpless by [prior] gunshots ..., such ‘extremely wicked or shockingly evil’ action may be characterized as especially heinous, atrocious, or cruel.” Hardy v. State, 804 So.2d 247, 288 (Ala.Crim.App.1999) (citations and quotations omitted).
Further, “[psychological torture [under the third factor] can be inflicted by leaving the victim in his last moments aware of, but helpless to prevent, impending death.” Norris, 793 So.2d at 859-60 (citations and quotations omitted). “[T]he factor of psychological torture must have been present for an appreciable lapse of time, sufficient enough to have caused prolonged or appreciable suffering, i.e., the period of suffering must be prolonged enough to separate the crime from ‘ordinary’ murders for which the death penalty is not appropriate.” Id. at 861 (holding that the murder of three individuals was not psychologically torturous because the three victims were shot in rapid succession; the “first three shots were sudden, without any warning or precipitating event[, and] [t]here was nothing preceding the first murder that would have evoked in the victims intense apprehension, fear, or anticipation of their deaths”).
In finding that the especially heinous, atrocious, or cruel aggravating circumstance was applicable here, the circuit court stated:
“Three people were killed and portions of the killings were caught on videotape. As the first victim was being murdered, the other two victims probably knew their fate and had to suffer through a period of time knowing they probably would also be killed. Even if the first two victims were shot at the same time, one of the victims did not die immediately and that third victim would have been aware [of] what was happen *987 ing until the time that he or she was also killed. The video also clearly shows that the first of two gunshot wounds to Kim Olney was not immediately fatal. Olney suffered, as the time-lapse tape showed by her continued movement after first being shot, for a period of time. This suffering was not over until Brandon Mitchell fired a second shot in her head and killed Olney. The Court finds that words used in the general instruction such as ‘extremely wicked,’ ‘shockingly evil,’ ‘unnecessarily torturous,’ ‘conscienceless’ and ‘pitiless’ all apply to this offense.”
(C.R. 24.) The circuit court’s findings are supported by the record and support its finding that the especially heinous, atrocious, or cruel aggravating circumstance applied to this crime.
The record establishes that at least one victim suffered psychological torture. Ol-ney and Smith were both shot behind the ear at close range with the same weapon. Olney and Smith were in different areas of the Inn’s lobby when they were shot. Specifically, Olney was on the floor in the clerk’s area behind the counter and Smith was in the visitor’s area. Thus, the manner in which Olney and Smith were murdered indicates that Mitchell had to place the pistol behind one of the victim’s ears and pull the trigger. After murdering that victim, Mitchell had to travel to a different area of the Inn’s lobby, hold the gun to the next victim’s head, and pull the trigger. “These murders were not accomplished in a rapid-fire manner; there was sufficient time between the ... murders for the next victim to be placed in significant fear for his or her life.... ” Taylor v. State, 808 So.2d 1148, 1169 (Ala.Crim.App.2000). Therefore, the circuit court did not abuse its discretion in finding that at least one of the victims suffered psychological torture.
Moreover, the record establishes that while Olney lay on the floor, Mitchell first shot her in the arm, rendering her helpless. After being shot in the arm, Olney, obviously in pain and fearing for her life, continued to move. Some time thereafter, Mitchell placed the pistol behind Olney’s ear and shot her in the head. “When [Mitchell] deliberately sho[t] [Olney] in the head in a calculated fashion, after [she] ha[d] already been rendered helpless by [prior] gunshots ..., such ‘extremely wicked or shockingly evil’ action may be characterized as especially heinous, atrocious, or cruel.” Hardy, 804 So.2d at 288 (citations and internal quotations omitted).
Because the State presented evidence indicating that appreciable time lapsed between the fatal shootings of at least two of the three victims and appreciable time lapsed between Mitchell’s first shot wounding Olney and the second, fatal shot, the State met its burden of proof, and the circuit court correctly found that the offenses were especially heinous, atrocious, or cruel. See Ex parte Rieber, 663 So.2d at 1003 (“As the Court of Criminal Appeals pointed out, evidence as to the fear experienced by the victim before death is a significant factor in determining the existence of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel.”); Hardy, 804 So.2d at 288. Therefore, Mitchell is not entitled to any relief on this issue.
IV.
Mitchell next argues that the circuit court’s override of the jury’s recommendation of life in prison without the possibility of parole was unconstitutional under the Sixth Amendment pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Mitchell raises sever *988 al sub-arguments in support of this issue. Because Mitchell failed to present these arguments to the circuit court, this Court will review them for plain error only. See Rule 45A, Ala. R.App. P.
Mitchell first makes a general argument that his death sentence violates Ring. In Ring, the United States Supreme Court applied its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases and held that under the Sixth Amendment, capital defendants are “entitled to a jury determination of any fact [other than a prior conviction] on which the legislature conditions an increase in their maximum punishment.” Ring, 536 U.S. at 600. In Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), the Alabama Supreme Court applied Ring to a similar situation and held:
“[W]hen a defendant is found guilty of a capital offense, ‘any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.’ Ala.Code 1975, § 13A-5-45(e); see also Ala.Code 1975, § 13A-5-50 (‘The fact that a particular capital offense as defined in Section 13A-54l0(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.’). This is known as ‘double-counting’ or ‘overlap,’ and Alabama courts ‘have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense.’ Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 965 (Ala.Crim.App.1992).
“Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was ‘proven beyond a reasonable doubt.’ Ala.Code 1975, § 13A-5-45(e); Ala.Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Waldrop’s case, the jury, and not the trial judge, determined the existence of the ‘aggravating circumstance necessary for imposition of the death penalty.’ Ring [v. Arizona], 536 U.S. [584,] 609, 122 S.Ct. [2428,] 2443 [ (2002) ]. Therefore, the findings reflected in the jury’s verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) ] require.”
859 So.2d at 1188.
Like the appellant in Waldrop, Mitchell was convicted of capital offenses that have corresponding aggravating circumstances, i.e., murder committed during the course of a robbery, see §§ 13A-5-40(a)(2), 13A-5-49(4), Ala.Code 1975, and murder of “two or more persons ... by one act or pursuant to one scheme or course of conduct,” see §§ 13A-5-40(a)(10), 13A-5-49(9), Ala.Code 1975. Accordingly, the jury’s verdict finding Mitchell guilty of murder during the course of a robbery and of murder of two or more persons pursuant to one scheme or course of conduct established that the jury unanimously found that two aggravating circumstances *989 existed.[2] Because the jury’s guilt-phase verdict established that the jury found a fact necessary to expose Mitchell to a sentence of death, Mitchell’s Sixth Amendment right to a jury was not violated.
Mitchell next argues that the United States Supreme Court’s holding in Ring was violated because the circuit court made the ultimate determination that the aggravating circumstances outweighed the mitigating circumstances. This argument is also without merit. In Waldrop, the Alabama Supreme Court addressed an identical issue and held:
“The determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.”
Waldrop, 859 So.2d at 1190. Because the balance of the aggravating circumstances and the mitigating circumstances, i.e., the sentencing determination itself, is not a fact that was necessary to expose Mitchell to a sentence of death, his death sentence does not violate Ring. ' Consequently, Mitchell is not entitled to any relief on this issue.
Mitchell next argues that the United States Supreme Court’s holding in Ring was violated because the circuit court made findings of fact regarding the existence of aggravating circumstances and because the circuit court found the aggravating circumstance that the murders were especially heinous, atrocious, or cruel as compared to other capital offenses. § 13A-5-49(8), Ala.Code 1975. These arguments are also without merit. In Wal-drop, the Alabama Supreme Court rejected a similar argument as follows:
“Waldrop claims that the trial court’s determination that the murders were especially heinous, atrocious, or cruel as compared to other capital offenses — an aggravating circumstance under Ala. Code 1975, § 13A-5-49(8) — is a factual determination that under Ring [v. Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002),] must be made by the jury. However, Ring and Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000),] do not require that the jury make every factual determination; instead, those cases require the jury to find beyond a reasonable doubt only those facts that result in ‘an increase in a defendant’s authorized punishment ... ’ or ‘ “expose[ ] [a defendant] to a greater punishment....’” Ring, 536 U.S. at 602, 604, 122 S.Ct. at 2439, 2440 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348). Alabama law requires the existence of only one aggravating circumstance in order for a defendant to be sentenced to death. Ala.Code 1975, § 13A-5-45(f). The jury in this case found the existence of that one aggravating circumstance: that the murders were committed while Waldrop was engaged in the commission of a robbery. At that point, Waldrop became ‘exposed’ -to, or eligible for, the death penalty. The trial court’s subsequent determination that the murders were especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances, a process that we *990 held earlier is not an ‘element’ of the offense.”
Ex parte Waldrop, 859 So.2d at 1190. See also Scott v. State, [Ms. CR-06-2233, Mar. 26, 2010] _ So.3d _, _ (Ala.Crim.App.2010) (holding that “no error occurred when the trial court found the existence of an aggravating circumstance that was not first submitted to the jury”).
Like the appellant in Waldrop, Mitchell became eligible for the death penalty when the jury convicted him of capital offenses that have corresponding aggravating circumstances. Consequently, the circuit court’s consideration of additional facts “implicated only in the process of weighing the aggravating and mitigating circumstances” did not violate Ring. Ex parte Hodges, 856 So.2d 936, 944 (Ala.2003).
V.
Mitchell next argues that the circuit court’s decision to override the jury’s sentencing recommendation violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Mitchell, however, failed to first present this argument to the circuit court. Therefore, this Court will review it for plain error only. See Rule 45A, Ala. R.App. P.
In North Carolina v. Pearce, the Supreme Court of the United States held that the Double Jeopardy Clause of the Fifth Amendment contains three basic protections: “It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). See also Schiro v. Farley, 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (reaffirming the three protections of the Double Jeopardy Clause). “These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense.” Id. (citing United States v. Wilson, 420 U.S. 332, 339, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). The Alabama Supreme Court has held that the Double Jeopardy Clause of Art. I., § 9, Alabama Constitution of 1901, applies only to the specific protections set forth in Pearce. See Ex parte Wright, 477 So.2d 492, 493 (Ala.1985); Adams v. State, 955 So.2d 1037, 1098 (Ala.Crim.App.2003) (rev’d in part by Ex parte Adams, 955 So.2d 1106 (Ala.2005)).
Under these principles, the State of Alabama’s bifurcated sentencing scheme, which vests the ultimate sentencing authority in the judge after the jury has made a sentencing recommendation, does not subject capital defendants to double jeopardy. The jury’s sentencing recommendation is not binding on the circuit court and thus does not constitute a judgment. As the Supreme Court of the United States held in Spaziano v. Florida, 468 U.S. 447, 465, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984):
“[Because] there is no constitutional imperative that a jury have the responsibility of deciding whether the death penalty should be imposed[,] petitioner’s double jeopardy challenge to the jury-override procedure [is without merit.] If a judge may be vested with sole responsibility for imposing the penalty, then there is nothing constitutionally wrong with the judge’s exercising that responsibility after receiving the advice of the jury. The advice does not become a judgment simply because it comes from the jury.”
*991 Accordingly, judicial sentencing after the jury has made a nonbinding recommendation does not constitute a “second prosecution for the same offense after acquittal!,] a second prosecution for the same offense after conviction!, or] multiple punishments for the same offense,” Pearce, 395 U.S. at 717, and does not violate the Double Jeopardy Clause of the Fifth Amendment. See Spaziano, 468 U.S. at 465 (holding that judicial sentencing after a jury recommendation does not violate the Double Jeopardy Clause). Therefore, Mitchell is not entitled to any relief on this issue.
VI.
Mitchell next argues that the circuit court’s judicial override of the jury’s sentencing recommendation of life in prison without the possibility of parole violated the Alabama Supreme Court’s holding in Ex parte Taylor, 808 So.2d 1215, 1219 (Ala.2001), because the circuit court’s sentencing order failed to state its specific reasons for the override. Mitchell failed to first present this argument to the circuit court; therefore, this Court will review it for plain error only. See Rule 45A, Ala. R.App. P.
In Ex parte Taylor, the Alabama Supreme Court held:
“Under Alabama’s capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury’s recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (‘in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict’). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury’s recommendation the consideration he gave it.”
808 So.2d at 1219 (citing McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378, 1382 (Ala.1986)). The Alabama Supreme Court subsequently revisited the issue in Ex parte Carroll, 852 So.2d 833 (Ala.2002), and added an additional requirement in cases involving the circuit court’s override of a jury recommendation. In Carroll, the Alabama Supreme Court held that, in addition to providing the “specific reasons for giving the jury’s recommendation the consideration he gave it,” Taylor, 808 So.2d at 1219, the trial judge is also required to treat the jury’s sentencing recommendation as a mitigating circumstance. Ex parte Carroll, 852 So.2d at 836.
Specifically, the Court stated:
“The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.”
852 So.2d at 836.
In this case, the jury recommended, by a vote of 10-2, that Mitchell be sentenced to life in prison without the possibility of parole. However, in sentencing Mitchell to death, the circuit court concluded that it *992 was “strongly of the opinion” that the jury had incorrectly weighed the aggravating circumstances and the mitigating circumstances. In reaching its conclusion, the circuit court stated:
“In preparation for the sentencing hearing, the Court reviewed virtually every Alabama appellate case addressing the issue of a potential jury override. In determining Brandon Mitchell’s sentence the Court weighed very heavily the jury’s 10 to 2 recommendation for the sentence of Life Without the Possibility of Parole, the Court even reviewed the occupation of all of the jurors, and determined that based upon their occupations the jury was fairly representative of the citizenry of Jefferson County, Alabama. Although the jury’s recommendation weighs heavily in favor of the Defendant, the Court is strongly of the opinion that 10 jurors incorrectly determined that the mitigating factors outweighed the aggravating factors. Even with the jury’s recommendation included as an additional mitigating circumstance, the Court is of the opinion that the aggravating circumstances still outweigh the mitigating circumstances. The Court is of the opinion that the State resting during the penalty phase without presenting any aggravating circumstances, but being allowed to re-open their case, may have made the jurors deemphasize the weight that should have been attributed to evidence presented in support of the aggravating circumstances. Even if this did not [a]f-fect the jury’s deliberations, the Court feels strongly that the aggravating circumstances outweigh the mitigating circumstances.”
(C.R. 26.) Further, the circuit court noted that in arriving at its decision, it had,
“considered the evidence presented at trial, the evidence presented during the penalty phase in the jury’s presence, the jury’s 10 to 2 advisory verdict for Life Without Parole, the Pre-Sentence Investigation Report (although some portions of the report were expressly excluded from the Court’s consideration such as Youthful Offender convictions), additional testimony at the sentencing phase, and arguments presented at the sentencing hearing.”
(C.R. 26.) Because the circuit court clearly set forth its reasons for “giving the jury’s recommendation the consideration he gave it,” expressly stated that the jury’s recommendation “weighted] heavily in favor of the defendant,” and gave its reasons for overriding the jury’s recommendation, this Court finds that the circuit court satisfied the requirements set forth in Taylor and Carroll. Carroll, 852 So.2d at 836 (C.R. 26-27.) Consequently, Mitchell is not entitled to relief on this issue.
VII.
Mitchell next argues that Alabama’s capital-sentencing scheme is unconstitutional because § 13A-5-47(d), Ala. Code 1975 (hereinafter “Alabama’s judicial-override provision”), provides no standards for a judge in overriding a jury’s recommendation of life in prison without the possibility of parole. Specifically, Mitchell asserts that Alabama’s judicial-override provision violates the Eighth and Fourteenth Amendments because it vests the final sentencing authority in the circuit court. Mitchell also contends that Alabama’s judicial-override provision is “standardless” and thus violates Ring v. Arizona, 536 U.S. at 619, and is unconstitutional under Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). Mitchell, however, failed to present these arguments to the circuit court; therefore, this Court will review them for plain error only. See Rule 45A, Ala. R.App. P.
*993 Initially, this Court notes that the Constitution of the United States does not prohibit vesting the final sentencing authority in the circuit court. See Spaziano v. Florida, 468 U.S. at 465. Further, in Harris v. Alabama, the Supreme Court of the United States held that Alabama’s sentencing standard, which (at that time) required only that the judge consider the jury’s advisory opinion, was “consistent with established constitutional law.” 513 U.S. 504, 511, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). The Court went on to explain that “the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict.” Id. at 512. Therefore, Mitchell’s argument that Alabama’s judicial-override provision is unconstitutional is without merit.
Moreover, Alabama’s judicial-override provision is not, as Mitchell asserts, stan-dardless. In rejecting the argument that Alabama’s judicial-override provision is standardless, the Alabama Supreme Court has held:
“This Court in Ex parte Apicella, 809 So.2d 865 (Ala.2001), upheld the constitutionality of having a judge, not the jury, determine the punishment in a capital case. In Ex parte Taylor, 808 So.2d 1215 (Ala.2001), this Court held that the capital-sentencing procedure set forth in §§ 13A-5-47 and 13A-5-53, Ala.Code 1975, provided sufficient guidance to prevent the arbitrary and capricious imposition of a death sentence. Specifically, the Court noted that the capital-sentencing procedure ‘ensures that the trial judge is given adequate information and sufficient guidance in deciding whether to accept or to reject a jury’s recommended sentence’ and that § 13A-5-53, Ala.Code 1975, provided sufficient guidelines for an appellate determination of ‘whether a trial judge’s override of the jury’s recommendation is appropriate in a particular case.’ 808 So.2d at 1219.”
Ex parte Jackson, 836 So.2d 979, 989 (Ala.2002). See also Ex parte Carroll, 852 So.2d 833, 836 (Ala.2002) (establishing standard under which the circuit court must weigh a jury’s recommendation of life in prison without the possibility of parole). Accordingly, Mitchell’s argument that Alabama’s judicial-override provision is “stan-dardless” and thus “unconstitutional” is without merit.[3]
To the extent that Mitchell argues that Alabama’s sentencing scheme violates the Equal Protection Clause because it “fails to set forth uniform standards as to how much weight a jury’s sentencing recommendation should be given by the trial judge” (Mitchell’s brief, at 34), this Court rejected an identical argument in Lewis v. State, 24 So.3d 480, 536 (Ala.Crim.App.2006). In Lewis, this Court explained:
“Lewis also contends that our death-penalty scheme violates the Equal Protection Clause because, he says, it is arbitrary and disparate in that it fails to set forth uniform standards as to the weight a trial court must give a jury’s sentencing recommendation. As authority for this proposition, Lewis cites the decision in Bush v. Gore [, 531 U.S. 98, 121 S.Ct. 525 (2000) ]. We fail to see how this decision lends support for Lewis’s claim, given that the Supreme Court took care to state that its decision was ‘limited to the present circumstances,’ noting that ‘the problem of equal protection in election processes generally present many complexities.’ 531 U.S. at 109, *994 121 S.Ct. [at 532], Moreover, in Harris v. Alabama, 513 U.S. 504, 511-15, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), the United States Supreme Court rejected a claim that Alabama’s death penalty statute was unconstitutional because it did not specify what weight the trial court must afford a jury’s recommendation. Alabama courts have rejected similar claims that trial judges deprive defendants of equal protection under the law by employing different processes in determining what weight to give a jury’s recommendation as to sentencing. See, e.g., Smith v. State, 756 So.2d 892, 920 (Ala.Crim.App.1997), aff'd, 756 So.2d 957 (Ala.), cert. denied, 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000). Thus, no basis for reversal exists as to these claims.”
24 So.3d 480, 536 (Ala.Crim.App.2006). Based on this Court’s holding in Lewis, Mitchell’s equal-protection argument is without merit. Therefore, this issue does not entitle Mitchell to relief.
VIII.
Mitchell next argues that evolving standards of decency have rendered Alabama’s sentencing scheme cruel and unusual in violation of the Eighth Amendment. Mitchell failed to first present this argument to the circuit court; therefore, this Court will review it for plain error only. See Rule 45A, Ala. R.App. P.
This argument has been repeatedly considered and rejected by both this Court and the Alabama Supreme Court. As this Court noted in Flowers v. State,
“ ‘ “[B]oth the death penalty in general and Alabama’s capital-murder statute in particular have been upheld against a variety of constitutional attacks. See Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (holding that Alabama’s capital statute does not violate the Eighth Amendment); Gregg v. Georgia, 428 U.S. 153, 169, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion) (holding that ‘the punishment of death does not invariably violate the Constitution’); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (holding that the death penalty is not per se violative of the Eighth Amendment); and Ex parte Taylor, 808 So.2d 1215 (Ala.2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002) (holding that Alabama’s capital-murder statute does not violate the Fourteenth Amendment). Contrary to [the defendant’s] contention, the death penalty is not per se unconstitutional and, therefore, [the defendant’s] argument is meritless.” ’ ”
922 So.2d 938, 958 (Ala.Crim.App.2005) (quoting Clark v. State, 896 So.2d 584, 642-43 (Ala.Crim.App.2003)). See also Spaziano v. Florida, 468 U.S. at 463-64 (holding that judicial override of a jury’s recommendation of life in prison without the possibility of parole is not cruel and unusual, despite the fact that the majority of States do not allow judicial override). Because Mitchell’s argument has already been rejected and because he has failed to offer any compelling reason for this Court to revisit the issue, he is not entitled to relief as to this claim.
IX.
Mitchell next argues that Alabama’s judicial-override provision is unconstitutional under Art. I, § 15, Alabama Constitution of 1901. Specifically, Mitchell argues that Art. I, § 15, provides greater protections against cruel or unusual punishment than does the Eighth Amendment of the United States Constitution. To support his argument, Mitchell explains that Art. I, § 15, proscribes “cruel or unusual” *995 punishments and the Eighth Amendment proscribes “cruel and unusual” punishments. (Mitchell’s brief, at 43-44.) (Emphasis in original.) According to Mitchell, the use of the disjunctive conjunction in Art. I, § 15, establishes that the cruel-or-unusual-punishment clause of the Alabama Constitution affords more protection than does the Eighth Amendment. He then argues that Alabama’s judicial-override provision violates Alabama’s cruel-or-unusual-punishment clause. Mitchell failed to first present this argument to the circuit court; therefore, this Court -will review it for plain error only. See Rule 45A, Ala. R.App. P.
This Court need not decide whether Art. I, § 15, affords broader protections than the Eighth Amendment because Mitchell has not met his burden of establishing that Alabama’s judicial-override provision violates either. It is well settled that an individual challenging the constitutionality of a statute bears the burden of establishing that the challenged statute is unconstitutional. See Cole v. State, 721 So.2d 255, 260 (Ala.Crim.App.1998) (recognizing that the appellant bears the burden of establishing that a State statute is unconstitutional); Holmes v. Concord Fire Dist., 625 So.2d 811, 812 (Ala.Civ.App.1993) (“The party mounting a constitutional challenge to a statute bears the burden of overcoming a presumption of constitutionality.”). Although Mitchell argues — in general terms — that Art. I, § 15, is broader than the Eighth Amendment, he has not provided any argument regarding how the alleged difference between Art. I, § 15, and the Eighth Amendment affects Alabama’s judicial-override provision. Because Mitchell has not presented any argument or evidence to support his assertion that Alabama’s judicial-override provision violates Art. I, § 15, he has not met his burden and is not entitled to any relief.
Moreover, the gist of Mitchell’s argument appears to be that Alabama’s judicial-override provision violates the proscription of cruel or unusual punishment contained in Art. I, § 15, because it results in the arbitrary imposition of the death penalty. Mitchell appears to reason that because the jury is not required to unanimously agree on the sentencing determination and because there are no standards for the exercise of judicial override, Alabama’s judicial-override provision results in judges arbitrarily imposing the death penalty. This argument has been rejected by both this Court and the Alabama Supreme Court. See Ex parte Waldrop, 859 So.2d at 1191 (holding that “[although not required by Harris, ... Alabama’s statutory procedures d[o] guard against an arbitrary and capricious [imposition of a sentence of death] by a trial court....”); Ex parte Taylor, 808 So.2d at 1219 (holding “that Alabama’s capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner....”); Harris v. State, 2 So.3d at 902 (same). Because Alabama’s judicial-override provision does not result in the arbitrary imposition of the death penalty, Mitchell’s argument is without merit.
X.
Mitchell next argues that the circuit court erred in failing to consider two relevant nonstatutory mitigating circumstances. Specifically, Mitchell asserts that the circuit court failed to consider that his brother, sister, and foster mother “all testified that they loved him” and that “Mitchell’s life still has purpose and value, and should not be taken.” (Mitchell’s brief, at 48.) Mitchell’s argument appears to be based solely on the fact that the circuit court’s sentencing order does not list these two alleged mitigating circum *996 stances as circumstances that the circuit court weighed in sentencing Mitchell to death. Because Mitchell failed to present this argument to the circuit court, it will be reviewed for plain error only. See Rule 45A, Ala. R.App. P.
It is well settled that “ ‘[a] sen-tencer in a capital case may not refuse to consider or be “precluded from considering” mitigating factors.’ ” Lewis v. State, 24 So.3d 480, 530 (Ala.Crim.App.2006) (quoting Williams v. State, 710 So.2d at 1347, quoting in turn Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), quoting in turn Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)). “‘It is not required that the evidence submitted by the accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the sentencer, in this case, the trial court; although consideration of all mitigating circumstances is required, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sen-tencer.’ ” Ex parte Land, 678 So.2d 224, 241 (Ala.1996) (quoting Haney v. State, 603 So.2d 368, 389 (Ala.Crim.App.1991)). See also Gavin v. State, 891 So.2d at 990 (“Although the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer.” (internal citations and quotations omitted)). Further, it is “settled law that ‘the trial court is not required to specify in its sentencing order each item of proposed non-statutory mitigating evidence offered that it considered and found not to be mitigating.’ ” Ex parte Ferguson, 814 So.2d 970, 979 (Ala.2001) (quoting Williams v. State, 710 So.2d at 1347). See also McWhorter v. State, 781 So.2d 257, 309 (Ala.Crim.App.1999)(“ ‘Although the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Moreover, the trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating.’ Further, ‘ “the decision as to whether a particular mitigating circumstance is sufficiently proven by the evidence and the weight to be accorded to it rests with the trial court.” ’ ” (internal citations omitted)).
Neither the record nor the circuit court’s sentencing order supports Mitchell’s argument that the circuit court failed to consider two mitigating circumstances. Instead, it appears that the circuit court did not restrict Mitchell’s presentation of evidence in mitigation and considered all the evidence Mitchell presented. After finding that no statutory mitigating circumstances existed and detailing the non-statutory mitigating circumstances it found to exist, the circuit court stated:
“The Court received, reviewed, and considered a written Pre-Sentence Investigation Report, permitted the State and the Defendant an opportunity to argue regarding mitigating and aggravating circumstances, and gave both parties an opportunity to present any testimony or evidence. The State presented victim impact testimony, but no additional aggravating circumstances pursuant to the statutory scheme outlined in § 13A-5-49, Code of Alabama (1975). The defense reasserted mitigating evidence that had been presented in the presence of the jury. The Defendant was also given an opportunity to say something before his sentence was imposed, and he told the victim’s family members that he was sorry for what had happened. The Court has considered the evidence presented at trial, the evi *997 dence presented during the penalty phase in the jury’s presence, the jury’s 10 to 2 advisory verdict for Life Without Parole, the Pre-Sentence Investigation Report (although some portions of the report were expressly excluded from the Court’s consideration such as Youthful Offender convictions), additional testimony at the sentencing phase, and arguments presented at the sentencing hearing.
“The Court will note that this decision weighed heavily on the Court and that the decision is based upon existing law, not based upon ‘passion, prejudice, or any other arbitrary factor.’ § 13A-5-53(a)(1), Code of Alabama (1975). The court has weighed the aggravating and mitigating circumstances and finds that the aggravating circumstances outweigh the mitigating circumstances. Based upon all factors previously mentioned, it is the judgment and sentence of this Court that Brandon Mitchell be sentenced to death on Counts One, Two, Three and Four of the indictment.”
(C.R. 26.) It is clear that the circuit court considered all the mitigating circumstances presented to it. “[T]he trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating.” Williams v. State, 710 So.2d at 1347.
Because the circuit court clearly considered all mitigating circumstances presented to it, this Court finds that no error, much less plain error, occurred. See Reeves v. State, 807 So.2d 18, 48-49 (Ala.Crim.App.2000) (holding that the circuit court “fully complied with Lockett and its progeny” where “[t]he sentencing order in this case shows that the trial court considered all of the mitigating evidence offered by the appellant”). Therefore, Mitchell is not entitled to relief as to this claim.
XI.
Mitchell next argues that the prosecutor’s sentencing-phase closing arguments violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by:
“commenting on Mitchell’s failure to testify, impermissibly inflaming the passions and prejudices of the jury by talking about the death of the prosecutor’s brother during a robbery and how the brother’s death impacted the prosecutor just like it impacted the victims’ families, urging the jurors to show the defendant the same mercy shown the dead victims, impermissibly vouching for the authority of the state, misstating the law as it applies to mitigation by stating that it is an excuse, and improperly denigrating the defendant’s mitigation evidence by characterizing it as excuses.”
(Mitchell’s brief, at 53-54) (citing Ex parte Tomlin, 909 So.2d 283, 287 (Ala.2003)). Mitchell then surmises that if these alleged errors had not occurred, he might have received a unanimous sentencing recommendation for life in prison without the possibility of parole, which would have required the circuit court to afford the jury’s recommendation greater weight. (Mitchell’s brief, at 54.)
“In judging a prosecutor’s closing argument, the standard is whether the argument ‘ “ ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ” ’ ” Sneed v. State, 1 So.3d at 138 (quoting Darden v. Wainwright, 477 U.S. at 181, quoting in turn Donnelly v. DeChristoforo, 416 U.S. at 643). With this standard in mind, this Court now turns to Mitchell’s arguments.
A.
Mitchell contends that the prosecutor improperly commented on his failure *998 to testify and that the circuit court’s curative instruction was insufficient to remove the harm caused by the comment. According to Mitchell, this error violated his constitutional rights and requires reversal.
During the State’s penalty-phase closing arguments, the prosecutor stated that “[Mitchell] didn’t ask for mercy.... He let his family members come up here and cry for him. You never heard out of his mouth, I’m sorry.” (R. 1156-57.) Defense counsel objected to the prosecutor’s comment. The circuit court sustained the objection and gave the following curative instruction:
“All right. Ladies and gentlemen, I’m going to sustain the defense’s objection on that. As I instructed you at the beginning phase of the trial, the defendant does not have to testify. He’s got an absolute and unqualified privilege not to testify in this case. The State has the burden of proof in this phase just as they do in the original phase. And if a person charged with a crime chooses not to testify on his own behalf then you cannot draw any inference or adverse inference whatsoever by that decision. So I’m going to instruct all of you to disregard that comment. And can everybody disregard that? Everyone understands that principle of law; is that correct?”
(R. 1157.)
Later, defense counsel moved for a mistrial, arguing that the prosecutor’s comment was improper and that the circuit court’s curative instruction was insufficient. (R. 1197-98.) The circuit court denied Mitchell’s motion for a mistrial. Specifically, the circuit court ruled that the limiting instruction it gave was sufficient.
On appeal, Mitchell reasserts his argument that the circuit court’s curative instruction was insufficient. Specifically, Mitchell argues that the circuit court’s curative instruction was insufficient because the court did not inform the jury that: 1) “the remarks were ‘improper’”; 2) the “statements of counsel are not evidence”; 3) “Mitchell ‘cannot be compelled’ to testify ‘against himself”; and 4) “‘no presumption of guilt’ should be drawn from his failure to testify.” (Mitchell’s brief, at 51.) This Court disagrees.
It is well settled that “[a] defendant has the right not to take the witness stand and testify in his own behalf and, if he exercises that right, not to be the subject of comment by the prosecuting attorney.” Bush v. State, 695 So.2d 70, 132 (Ala.Crim.App.1995) (citations omitted).
“A reversal [based on a prosecutor’s improper comment on the defendant’s failure to testify] may be prevented if the trial court sustains an objection to the improper remark and promptly and appropriately instructs the jury as to the impropriety of the remark. Ex parte Wilson, 571 So.2d 1251 (Ala.1990). In determining whether the curative instructions eradicated the prejudice caused by the improper remark, we must consider each case on its own facts. Whitt v. State[, 370 So.2d 736 (Ala.1979) ]. The ‘type of remark ... whether promptly objected to, and the appropriateness of the trial judge’s instructions’ shall be considered. Id., 370 So.2d at 133.”
Bush, 695 So.2d at 133. In Whitt v. State, the Alabama Supreme Court explained that when a prosecutor comments on a defendant’s failure to testify:
“[A]t a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard *999 them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor’s remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt. U.S. v. Brown, 546 F.2d 166 (5th Cir.1977); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).”
370 So.2d 736, 739 (Ala.1979). See also Ex parte Wilson, 571 So.2d 1251, 1265 (Ala.1990). Although the circuit court’s instruction must adequately inform the jury that the defendant’s failure to testify must not be considered and that no unfavorable inference may be drawn therefrom, there is no particular verbiage that must be used to convey this message. See Whitt, 370 So.2d at 739 (recognizing that trial court’s instructions, in order to remove any possible prejudice from improper comments by the prosecutor as to the failure of the defendant to take the witness stand, need not contain any particular “verbiage,” and courts will “consider the circumstances of each case on its own, considering the type of remark, whether reply in kind or not, whether promptly objected to, and the appropriateness of the trial judge’s instructions.”); Pettibone v. State, 891 So.2d 280, 283 (Ala.Crim.App.2003).
This Court has thoroughly reviewed the prosecutor’s comment and the proceedings that followed and holds “that the trial court’s curative instruction to the jury adequately cured any prejudice.” Simmons v. State, 797 So.2d 1134, 1164 (Ala.Crim.App.1999). The circuit court sustained defense counsel’s objection immediately after the comment. The circuit court then promptly instructed the jury that Mitchell has an absolute right not to testify and that the jury could not draw an adverse inference from Mitchell’s decision not to testify. The circuit court then instructed the jury to disregard the comment and asked the jurors if they could comply with that instruction. The record indicates that the jurors nodded their heads to signal that they could disregard the comment. Cf. Peraita v. State, 897 So.2d 1161, 1204 (Ala.Crim.App.2003) (“ ‘Jurors are presumed to follow the trial court’s instructions.’ ”) (quoting Bryant v. State, 727 So.2d 870, 874-75 (Ala.Crim.App.1998)); Burgess v. State, 827 So.2d 134, 162 (Ala.Crim.App.1998) (“Jurors are presumed to follow the court’s instructions.”).
Based on the circumstances of this case, the circuit court’s jury instruction cured any prejudice that might have resulted from the prosecutor’s improper comment; therefore, this issue does not entitle Mitchell any relief. See Troup v. State, 32 Ala.App. 309, 319-20, 26 So.2d 611, 620 (Ala.App.1946) (holding that when “the trial court sustains the objection [to the prosecutor’s improper comment on the defendant’s failure to testify] and promptly and appropriately instructs the jury of the impropriety of such remarks, then such remarks should not cause a reversal of the case”) (citations omitted).
B.
Mitchell next argues that the prosecutor’s rebuttal closing argument in the penalty phase improperly inflamed the passions and prejudices of the jury, improperly urged the jury not to show Mitchell any mercy, and improperly argued that Mitchell’s mitigation evidence offered only an excuse. The portion of the prosecutor’s closing argument that Mitchell asserts was improper is as follows:
*1000 “You know, sitting at that table I’ve had a unique prospective. You know, about four years ago I sat where that family is sitting. My brother was killed over some car rims that I had bought for him for no reason. And I wonder when they killed him, what was his choice? Life or death?
“You see, he’s sitting here today and he’s asking you to make a choice that he didn’t make. He’s asking you to take all of this stuff, all of these excuses, and bottle them up and walk back there and choose life. I know how they feel. I’ve sat there. I’ve sat there.
“Life or death. You see, in life you get to carry on. The money, you get it back. The car rims or whatever, you buy some more. But when you make a calculated decision to take someone’s life, you can’t get that back. It’s one shot. You get one shot at life. And each one of those victims got one shot, but it wasn’t at life. It wasn’t one shot at life. It was that one shot that he put behind their ear. He chose death for those people. He chose death last year Thanksgiving Day for Ms. Smith. He chose death for Ms. Olney. And he chose death for Mr. Aylesworth.
“This is no time for sympathy, ladies and gentlemen. It’s no time for sympathy, none whatsoever, none. Get it out of your mind. Those are excuses. And there’s a saying that my grandmother used to tell me all the time and I remember it. I remember it verbatim. Excuses are monuments that build bridges that leads to nowhere, and those who use them are incompetent and masters of nothing. Those are excuses. He killed those people and now he wants you to do something that he couldn’t even do, that he would not do, and that he did not do.' Throw your sympathy away. There’s no room for sympathy here. No, ma’am; no, sir.
“During jury selection you each, each one of you, each one of you — that question was asked by [the State], could you consider the death penalty as an option. And everybody in this box said yes, they could consider the death penalty as an option. Well, ladies and gentlemen, right now, right here, right now, in this courtroom, T stand here on behalf of the State of Alabama along with Ms. Foster and I’s asking you to do the' right thing here, to do what the law provides, to follow the law. I’m asking you to sentence that man to death.”
(R. 1171-73.) Mitchell failed to object to this portion of the prosecutor’s argument; therefore, this Court will review it for plain error. See Rule 45A, Ala. R.App. P.
After reviewing the record and the arguments of counsel, this Court holds that the majority of the prosecutor’s comments were actually pleas for justice. In addressing an analogous situation in Newton v. State, 78 So.3d 458 (Ala.Crim.App.2009), this Court stated:
“Finally, Newton complains about the following that occurred during the prosecutor’s penalty phase rebuttal closing argument:
“ T want you to think about this. He sat as the judge, the jury, and the executioner on [Charles] Whatley. He administered the death penalty to [Charles] Whatley without his mamma—
“‘ — his son or his brother having the opportunity to stand in front of a jury of 12 good Macon County citizens and beg them for his life. He wants justice. I submit to you that he does not want justice. He has demonstrated in his actions that that’s not what he wants. He didn’t give [Charles] Whatley the opportunity to ask you 12 *1001 or any other 12 to stand here and say why I should — ’
“CR. 1106-07.)
“We addressed a similar argument in Gentry v. State, 689 So.2d 894, 906 (Ala.Crim.App.1994), rev’d on other grounds, 689 So.2d 916 (Ala.1996), as follows:
“ ‘The appellant contends that the following comments by the prosecutor in closing argument constituted an improper appeal to the jury to have sympathy for the victim: “[njobody went out and empaneled a jury for Kim Hill”; “[y]ou can look at Ward Gentry, but you cannot look at Kim Hill”; “nobody went out and got a judge for Kim”; “nobody went out and got two lawyers for Kim”; and “[h]e was her judge, and her jury, and her executioner.” He argues that these comments “impermissibly influenced the jury to disregard [its] legal duties and render a guilty verdict because of [its] sympathy for the deceased.” We do not agree. We view the comments as a call for justice, not sympathy, and, thus conclude that they are within the latitude allowed prosecutors in their exhortation to the jury to discharge its duties. Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Rutledge v. State[, 523 So.2d 1087 (Ala.Crim.App.1987) ]. The comment that Gentry was “her judge, and her jury, and her executioner” was the prosecutor’s impression and opinion derived from the evidence in the case, which he could legitimately argue. Henderson v. State, 584 So.2d 841 (Ala.Cr.App.1988); Galloway v. State, 484 So.2d 1199 (Ala.Cr.App.1986).’
“Similarly, we find the prosecutor’s remarks to be an appropriate call for justice. Therefore, we do not find that there was any error in this regard.”
Cf. Ingram v. State, 779 So.2d 1225, 1268-69 (Ala.Crim.App.1999) (upholding references to “drive-by shootings” and “drug wars”).
Likewise, this Court cannot conclude that the prosecutor’s closing argument “ ‘ “so infected the trial with unfairness as to make the resulting conviction a denial of due process.” ’ ” Sneed v. State, 1 So.3d at 138 (quoting Darden v. Wainwright, 477 U.S. at 181, quoting in turn Donnelly v. DeChristoforo, 416 U.S. at 643). The prosecutor’s references to his brother’s death appear to have been intended to illustrate the impact and gravity of murder, i.e., stolen property can be replaced but people cannot. Further, it is not improper for a prosecutor to urge the jury to set aside its sympathies in making its penalty-phase determination. Gobble v. State, [Ms. CR-05-0225, Feb. 5, 2010] _ So.3d _ (Ala. Crim App.2010); Boyd v. State, 715 So.2d 825, 846 (Ala.Crim.App.1997). Likewise, it is not improper for the prosecutor to inform the jury that the State seeks a death recommendation from it. See Brown v. State, 74 So.3d 984, 1020 (Ala.Crim.App.2010) (upholding the prosecutor’s statement: “I ask you to give his sympathy and the result of their begging the same way he gave it to Dotty Jemison and Cherea Jemison and sentence him to death or recommend the sentence of death as the law allows based on the proof to you”). Similarly, the prosecutor, as an advocate, may argue to the jury that it should give the defendant’s mitigating evidence little or no weight. See State v. Storey, 40 S.W.3d 898, 910-11 (Mo.2001) (holding that no error resulted from the prosecutor’s characterization of mitigation as excuses because the “State is not required to agree with the defendant that the evidence offered during the penalty *1002 phase is sufficiently mitigating to preclude imposition of the death sentence^ and] the State is free to argue that the evidence is not mitigating at all”). Finally, it is not improper for the prosecutor to argue that the defendant showed the victims no mercy. Melson v. State, 775 So.2d 857, 893 (Ala.Crim.App.1999) (holding that the prosecutor’s statement — “I want you to give some mercy to [Melson] just as he gave to the murder and robbery victims over there in that cooler” — not improper). Because the “prosecutor’s remarks [were] an appropriate call for justice,” Ingram, 779 So.2d at 1269, and within the bounds of an adversarial setting, this issue does not entitle Mitchell to any relief.
Moreover, even if part of the prosecutor’s argument were improper, such impropriety would not rise to the level of plain error. Rule 45A, Ala. R.App. P. “[Statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict.” Bankhead v. State, 585 So.2d 97, 106-07 (Ala.Cr.App.1989) (citing Orr v. State, 462 So.2d 1013, 1016 (Ala.Crim.App.1984)); and Sanders v. State, 426 So.2d 497, 509 (Ala.Crim.App.1982). See also Brown v. State, 74 So.3d at 1016.
Further, throughout the trial, the jurors were instructed that the arguments of counsel are not evidence and that they should not base their decision on passion or any other arbitrary factor. See Peraita v. State, 897 So.2d at 1204 (‘“Jurors are presumed to follow the trial court’s instructions.’ ” (quoting Bryant v. State, 727 So.2d at 874-75)); and Burgess v. State, 827 So.2d at 162 (“Jurors are presumed to follow the court’s instructions.”). Further, after the prosecutor’s argument and the circuit court’s instructions, the jury recommended that Mitchell be sentenced to life in prison without the possibility of parole; therefore, any erroneous comment was harmless. See Killingsworth v. State, 82 So.3d 716 (Ala.Crim.App.2009) (holding that errors in the penalty phase were harmless because the jury recommended a sentence of life in prison without the possibility of parole); Burgess v. State, 723 So.2d 742, 756 (Ala.Crim.App.1997) (holding that “[e]ven if any error had occurred during the sentence phase argument, it would have been harmless because the jury recommended that Burgess be sentenced to life imprisonment without parole”).
Based on the foregoing, “[t]here is no indication that the prosecutor’s comment[s] so infected the trial with unfairness that [Mitchell] was denied a fair trial.” Brown v. State, 11 So.3d at 909. Accordingly, this Court does not find that the prosecutor’s comments rose to the level of plain error.
XII.
Mitchell next argues that the circuit court’s penalty-phase jury instructions were ambiguous. Without pointing to any specific deficiency in the circuit court’s instruction, Mitchell argues, in general terms, that the circuit court’s instruction failed to properly inform the jury of its role and responsibility in determining his sentence. Because Mitchell failed to object to the circuit court’s instructions at trial, this issue will be reviewed for plain error only. See Rule 45A, Ala. R.App. P.
“When reviewing a trial court’s jury instructions, [this Court] must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them.” Johnson v. State, 820 So.2d 842, 874 (Ala.Crim.App.2000).
*1003 “A trial court has broad discretion when formulating its jury instructions. See Williams v. State, 611 So.2d 1119, 1123 (Ala.Cr.App.1992). When reviewing a trial court’s instructions, ‘ “the court’s charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together.” ’ Self v. State, 620 So.2d 110, 113 (Ala.Cr.App.1992) (quoting Porter v. State, 520 So.2d 235, 237 (Ala.Cr.App.1987)); see also Beard v. State, 612 So.2d 1335 (Ala.Cr.App.1992); Alexander v. State, 601 So.2d 1130 (Ala.Cr.App.1992).”
Williams v. State, 795 So.2d 753, 780 (Ala.Crim.App.1999). Further, “[w]hen allegedly ambiguous jury instructions have purportedly prejudiced a defendant’s case, [this Court] must determine ‘ “whether there is a reasonable likelihood that the jury has applied the challenged instructions in a way” that violates the constitution.’” Lewis v. State, 24 So.3d at 520 (citing Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), quoting in turn Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).
Initially, this Court notes that it appears that most of the language found in the circuit court’s instructions was either taken from Alabama’s pattern jury instructions or was requested by Mitchell himself. See Ex parte Wood, 715 So.2d 819, 824 (Ala.1998) (recognizing that in most instances use of the pattern jury instructions will not result in plain error; however, “there may be some instances when using those pattern charges would be misleading or erroneous”).
Further, this Court has reviewed the circuit court’s penalty-phase jury instructions and finds that the instructions were not ambiguous and that they did not mislead the jury regarding its penalty-phase role. The circuit court correctly instructed the jury regarding its role in the penalty phase. It thoroughly instructed the jury regarding aggravating circumstances and mitigating circumstances. The circuit court then properly instructed the jury regarding the burdens of proof for aggravating circumstances and mitigating circumstances. The circuit court correctly defined the aggravating circumstances. The circuit court then instructed the jury regarding statutory mitigation and informed the jury that it could consider any aspect of Mitchell’s character or record or any of the circumstances of the offense that Mitchell had offered as a basis for a sentence of life without parole. Further, the circuit court thoroughly instructed the jury regarding the process by which it should consider the aggravating circumstances and mitigating circumstances in reaching its decision. Finally, the circuit court properly instructed the jury regarding the weighing process.
After thoroughly reviewing the circuit court’s penalty-phase instructions, this Court finds that they were not ambiguous or misleading. Further, there was no indication in the record that the jury was confused by any of the circuit court’s instructions and the jury recommended a sentence of life without the possibility of parole. See Lewis, 24 So.3d at 520 (upholding allegedly redundant and confusing jury instructions where there was “no evidence of any confusion on the part of the jury”); Killingsworth v. State, 82 So.3d 716, 754 (Ala.Crim.App.2009) (holding that errors in the penalty phase were harmless because the jury recommended a sentence of life in prison without the possibility of parole). Consequently, this issue does not entitle Mitchell to any relief.
XIII.
Mitchell next argues that the circuit court erred in failing to grant him a con *1004 tinuance based on the State’s alleged discovery violations.
“The guidelines for determining whether a trial court has abused its discretion in denying a continuance are set out in Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986).” Fortenberry v. State, 545 So.2d 129, 138 (Ala.Crim.App.1988). In Saranthus, the Alabama Supreme Court explained:
“A motion for a continuance is addressed to the discretion of the court and the court’s ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).”
Ex parte Saranthus, 501 So.2d at 1257. See also Price v. State, 725 So.2d 1003, 1060-61 (Ala.Crim.App.1997).
In this case, Mitchell argues that a continuance was necessary because he did not have access to several key pieces of evidence until the week of trial. At trial, defense counsel argued that the defense needed a continuance to obtain and/or review the following: 1) a copy of the Department of Forensic Sciences’ report regarding the inability to test stains on Mitchell’s clothes for DNA because the sample was insufficient; 2) a copy of Detective Phillip Russell’s supplemental report indicating that a witness identified Mitchell from the video of the crime that was aired on television; 3) the tapes of interviews relating to a subsequent, unrelated murder involving Mitchell; 4) a copy of Kevin Spradley’s arrest report; and 5) copies of the photographic lineups used by Clifford Davis and James Jackson in identifying Mitchell.
During the hearing, the circuit court heard conflicting statements. The State argued that the Department of Forensic Sciences’ report had not been provided to the State and that defense counsel had been given access to the State’s entire file. The State argued that its entire file had been copied and that defense counsel waited two weeks to retrieve the file. The State further asserted that Detective Russell had only recently prepared the supplemental report and that it was immediately disclosed to counsel. Defense counsel denied that they waited two weeks to retrieve the file and denied that they had been given access to the State’s entire file. Mitchell’s counsel, however, conceded that they were in no way implying that the prosecution had “intentionally done anything” or that the prosecution was “tr[ying] to hold back” evidence. (R. 98-99.) Defense counsel also admitted that some of the items may have been disclosed and subsequently lost while in their possession.
To remedy any problem, the court ensured that defense counsel did or would have each of the items listed above. Further, the circuit court offered defense counsel additional funds to hire someone to listen to the tapes relating to the subsequent murder involving Mitchell. The circuit court also stated that it would take a long recess to allow defense counsel to interview the witness identified in Detective Russell’s supplemental report.
Based on the conflicting statements regarding defense counsel’s diligence and the circuit court’s remedy, this Court cannot say that the circuit court abused its discre *1005 tion by denying Mitchell’s motion for a continuance. See Wimberly v. State, 934 So.2d 411, 424 (AIa.Crim.App.2005) (“Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burdens counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances.” (citations and internal quotations omitted)). Moreover, this Court has searched the entire record and failed to find any indication that Mitchell suffered any prejudice as a result of the circuit court’s denial of his motion for a continuance. See Wimberly, 934 So.2d at 425 (holding that the appellant had not established that the denial of his motion to continue was prejudicial); T.D.M. v. State, [Ms. CR-08-0355, June 25, 2010] — So.3d -, -(Ala.Crim. App.2010) (affirming the circuit court’s denial of a motion to continue because there was no “indication of prejudice suffered by T.D.M. on this ground”). This Court “find[s] it extremely improbable that the additional time for preparation requested by [Mitchell] would have changed the result of the trial.” Price v. State, 725 So.2d at 1061 (citing Fortenberry v. State, 545 So.2d at 139). See also Beauregard v. State, 372 So.2d 37, 43 (Ala.Crim.App.1979) (citing Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969)(“The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires ‘a positive demonstration of abuse of judicial discretion.’ ”)). Therefore, this issue does not entitle Mitchell to any relief.
XIV.
Mitchell next argues that the circuit court erred in admitting gruesome photographs of the victims’ wounds and by allowing the prosecutor to use mannequin heads to show the angle and direction of the bullets as they entered and traveled through each of the victims.
To the extent Mitchell argues that the circuit court erroneously allowed the prosecutor to introduce photographs of the victims’ wounds, this argument is without merit. Alabama courts have long recognized that photographs depicting the crime scene and the wounds of the victims are relevant and admissible. See Stallworth v. State, 868 So.2d 1128, 1151 (Ala.Crim.App. 2001) (quoting Land v. State, 678 So.2d 201, 207 (Ala.Crim.App.1995)) (“The courts of this state have repeatedly held that photographs that accurately depict the crime scene and the nature of the victim’s wounds are admissible despite the fact that they may be gruesome or cumulative.”); Ward v. State, 814 So.2d 899, 906 (Ala.Crim.App.2000) (quoting Siebert v. State, 562 So.2d 586, 599 (Ala.Crim.App. 1989) (“The same rule applies to videotapes [that applies to] photographs.... ”)). In Brooks v. State, this Court explained:
“ ‘Generally, photographs are admissible into evidence in a criminal prosecution “if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.” ’ Bankhead v. State, 585 So.2d 97, 109 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d, 625 So.2d 1146 (Ala.1993), quoting Magwood v. State, 494 So.2d 124, 141 (Ala. Crim.App.1985), aff'd, 494 So.2d 154 (Ala.1986). ‘Photographic exhibits are admissible even though they may be cumulative, demonstrative of undisputed facts, or gruesome.’ Williams v. State, *1006 506 So.2d 368, 371 (Ala.Crim.App.1986) (citations omitted). In addition, ‘photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.’ Ex parte Siebert, 555 So.2d 780, 784 (Ala.1989). ‘This court has held that autopsy photographs, although gruesome, are admissible to show the extent of a victim’s injuries.’ Ferguson v. State, 814 So.2d 925, 944 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001). ‘ “[Ajutopsy photographs depicting the character and location of wounds on a victim’s body are admissible even if they are gruesome, cumulative, or relate to an undisputed matter.” ’ Jackson v. State, 791 So.2d 979, 1016 (Ala.Crim.App.2000), quoting Perkins v. State, 808 So.2d 1041, 1108 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), judgment vacated on other grounds, 536 U.S. 953 (2002), on remand to, 851 So.2d 453 (Ala.2002).”
973 So.2d at 393.
This Court has reviewed the photographs in question and holds that they were relevant and admissible to show the extent of the victims’ injuries. Further, although unpleasant, the photographs were not unduly gruesome. Therefore, the circuit court did not commit any error in allowing the photographs to be admitted at trial.
To the extent Mitchell argues that the circuit court erroneously allowed the State to use mannequin heads to show the trajectory of the bullets through the victims on the grounds that this evidence was irrelevant, cumulative, and unduly prejudicial, his argument is likewise without merit.[4]
Whether to allow the prosecutor to use mannequins to aid the jury in understanding the trajectory of a bullet through a victim is within the sound discretion of the circuit court and a conviction “will not be reversed on appeal unless [that discretion] has been clearly and grossly abused.” Ivey v. State, 369 So.2d 1276, 1278 (Ala.Crim.App.1979) (citations omitted). Further, this Court has held that the use of a mannequin to demonstrate a victim’s injuries is relevant and admissible. Id.; see Minor v. State, 780 So.2d 707, 765 (Ala.Crim.App.1999), overruled on other grounds, 780 So.2d 796 (Ala.2000); See also Gobble v. State, — So.3d at - (“Demonstrations and experiments are permitted or prohibited in the trial court’s discretion. Thus, Alabama appellate courts have affirmed trial court decisions permitting an experiment on cross-examination to test the defendant’s ability to calculate interest as he said he had; a demonstration using a mannequin and the defendant herself to discredit her assertion that the prosecuted homicide happened accidentally; a demonstration of the defendant’s version of how a fight occurred, the solicitor playing the deceased and the defendant playing himself; a demonstration wherein the defendant made prints of his bare feet in the sawdust on the courtroom floor; a demonstration by the defendant of the extent to which his injuries had impaired his ability to walk; and a demonstration between a brain damaged child and a special education therapist calculated to show the child’s physical and mental abilities.” (quoting William A. Schroeder and Jerome A. Hoffman, Alabama Evidence § 12:25 (3d ed. 2006) (footnotes omitted))).
*1007 Here, the use of the mannequin heads was relevant and admissible to illustrate the coroner’s testimony regarding the trajectory of the bullets through the 'victims and to aid the jury in understanding the extent of the victims’ injuries. Further, nothing in the record indicates that “the use of the mannequin was ... calculated to unfairly prejudice [Mitchell].” Ivey, S69 So.2d at 1279. Consequently, this Court cannot say that the circuit court “clearly and grossly abused” its discretion by allowing the prosecutor to use mannequin heads to show the trajectory of the bullets through the victims. Ivey, 369 So.2d at 1278.
XV.
Mitchell next argues that “the [circuit] court committed reversible error when it allowed two witnesses to testify as to what they thought the defendant meant [by] the word ‘lick.’ ” (Mitchell’s brief, at 67.) Specifically, Mitchell contends that the witnesses were improperly allowed to testify as to Mitchell’s mental operations.
Although Mitchell correctly states that “[a] witness may not testify to the uncommunicated intent or mental operation of another,” Perry v. Brakefield, 534 So.2d 602, 608 (Ala.1988), this particular error did not occur in the instant case. On the contrary, LaSundra Mosley and Jonathan Floyd both testified as to their own personal opinions and knowledge regarding the word “lick.” At trial, Mosley was asked, “Do you have any idea what a lick would mean ... ?” (R. 632.) After an objection by the defense, the circuit court told Mosley, “If you know what that means, I’ll allow you to testify to that.” (R. 632.) Mosley responded that a “lick” means a “robbery.” (R. 632.) Similarly, Floyd was asked, “In your mind, what did hit a lick mean?” (R. 891.) Floyd responded that he and his buddies at work use the phrase “hit a lick” when they are “going to make a lot of money.” (R. 892). Because both Mosley and Floyd testified to their personal understanding of the definition of the slang word “lick,” the circuit court did not abuse its discretion by allowing them to define “lick.”
XVI.
Mitchell next contends that the circuit court erroneously allowed the recording of a telephone conversation he had while incarcerated at the Jefferson County Jail to be admitted into evidence. Specifically, Mitchell contends that the recording was not properly authenticated and contained evidence of other crimes. Mitchell failed to present these specific arguments to the circuit court; therefore, this Court will review them for plain error only. See Rule 45A, Ala. R.App. P.
“The proper foundation required for the admission of a sound recording into evidence depends on the circumstances of the ease in which the admission is sought.” Smith v. State, 727 So.2d 147, 167 (Ala.Crim.App.1998), overruled on other grounds, Ex parte Borden, 769 So.2d 950 (Ala.2000) (citing Ex parte Fuller, 620 So.2d 675 (Ala.1993)). In Fuller, the Alabama Supreme Court set forth the following method for laying the foundation for the admissibility of an audio recording:
“If there is no qualified and competent witness who can testify that the sound recording or other medium accurately and reliably represents what he or she sensed at the time in question, then the ‘silent witness’ foundation must be laid. Under the ‘silent witness’ theory, a witness must explain how the process or mechanism that created the item works and how the process or mechanism ensures reliability. When the ‘silent witness’ theory is used, the party seeking to have the sound recording or *1008 other medium admitted into evidence must meet the seven-prong Voudrie [v. State, 387 So.2d 248 (Ala.Crim.App.1980) ] test. Rewritten to have more general application, the Voudrie standard requires:
“(1) a showing that the device or process or mechanism that produced the item being offered as evidence was capable of recording what a witness would have seen or heard had a witness been present at the scene or event recorded,
“(2) a showing that the operator of the device or process or mechanism was competent,
“(3) establishment of the authenticity and correctness of the resulting recording, photograph, videotape, etc.,
“(4) a showing that no changes, additions, or deletions have been made,
“(5) a showing of the manner in which the recording, photograph, videotape, etc., was preserved,
“(6) identification of the speakers, or persons pictured, and
“(7) for criminal cases only, a showing that any statement made in the recording, tape, etc., was voluntarily made without any kind of coercion or improper inducement.”
620 So.2d at 678.
In this case, the prosecutor laid the proper predicate for the admissibility of Mitchell’s November 8, 2006, telephone conversation from the Jefferson County jail. Deputy Carl Carpenter of the Jefferson County Sheriffs Department testified about the machine used to digitally record inmates’ telephone calls from the jail and how the conversations are stored on an inmate-telephone server. Carpenter’s testimony established that he was competent to operate the recording system. Additionally, Carpenter described how the system worked, described how he downloaded the conversation from the inmate-telephone server to a compact disc (“CD”), and stated that the CD accurately represented the telephone conversation that was stored on the server. Carpenter further testified that there were no changes to the recording. The testimony presented at trial further established the telephone call in question was traced to Mitchell’s assigned pin number, Mitchell referred to himself as “Brandon” during the conversation, and Mitchell spoke of details known only by Mitchell. Finally, Carpenter testified that before placing the telephone call, Mitchell was adequately warned that his conversation might be recorded and that Mitchell’s statements were voluntary and not part of a custodial statement to law-enforcement officers. (R. 815-23, 838-41.) As a result, the record establishes that the prosecution satisfied all of the Voudrie v. State, 387 So.2d 248 (Ala.Crim.App.1980), requirements and Mitchell is not entitled to relief.
With regard to Mitchell’s argument that the audio recording should have been excluded because it contained evidence of other crimes, this argument is also without merit.
In Gamble v. State, 791 So.2d 409, 439-40 (Ala.Crim.App.2000), this Court held:
“ ‘On the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith. This is a general exclusionary rule which prevents the introduction of pri- or acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question....
*1009 “ ‘The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant’s bad character and conformity therewith on the occasion of the now-charged crime. If the defendant’s commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.’
“C. Gamble, McElroy’s Alabama Evidence, § 69.01(1) at 300-01 (5th ed. 1996) (footnotes omitted). ‘This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried.’ Id. at 300.
“ ‘[Ejvidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for “other purposes” than to prove the accused’s guilt.’ Williamson v. State, 629 So.2d 777, 780 (Ala.Cr.App.1993). In Nicks v. State, 521 So.2d 1018 (Ala.Cr.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988), this court discussed the exceptions to the general exclusionary rule:
“ ‘Numerous Alabama cases list the exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted. These exceptions include the following:
“ ‘ “(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.”
“ ‘Nelson v. State, 511 So.2d 225, 233 (Ala.Cr.App.1986). See also Twilley v. State, 472 So.2d 1130 (Ala.Cr.App.1985); Brewer v. State, [440 So.2d 1155 (Ala.Cr.App.), cert. denied, 440 So.2d 1155 (1983) ]; Miller v. State, 405 So.2d 41 (Ala.Cr.App.1981); Thompson v. State, 374 So.2d 377 (Ala.Cr.App.1978), aff'd, 374 So.2d 388 (Ala.1979); McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528 (1954); Wilkins v. State, 29 Ala.App. 349, 197 So. 75, cert. denied, 240 Ala. 52, 197 So. 81 (1940); McElroy’s §§ 69.01(1)-(11); Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala. L.Rev. 241 (1984). All of the exceptions relate to the relevancy of the evidence, which means that evidence of separate and distinct crimes is admissible only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Noble v. State, 253 Ala. 519, 45 So.2d 857 (1950).
“ ‘ “All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may *1010 prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Evidence of other acts to be available must have some logical connection and reveal evidence of knowledge, design, plan, scheme, or conspiracy of the crime charged; or circumstantial evidence of identity of the person charged with the crime; or tends to corroborate direct evidence admitted.”
“ ‘Underhill, Criminal Evidence § 154 (3d ed. 1923).’
“521 So.2d at 1025-26. “‘The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State’s case-in-chief rests within the sound discretion of the trial judge.” ’ Akin v. State, 698 So.2d 228, 234 (Ala. Cr.App.1996), cert. denied, 698 So.2d 238 (Ala.1997), quoting Blanco v. State, 515 So.2d 115, 120 (Ala.Cr.App.1987).”
791 So.2d at 439-40.
During the telephone conversation at issue, Mitchell stated that he was caught with a knife in jail and that he needed the weapon to protect himself because his co-defendant had some gang members trying to “jump” him. In this case, the circuit court properly admitted the portions of the recording regarding Mitchell’s admission that he had been caught with a knife because it was relevant to show that he and his codefendant were feuding over the extent of their individual participation in the murders. Further, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. See Hocker v. State, 840 So.2d 197, 214-15 (Ala.Crim.App.2002) (“Evidence about the appellant’s collateral bad act was very probative because it was one of several factors that the appellant stated caused him to commit the murder. Furthermore, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. There were very few references to the collateral bad act during the guilt phase of the trial, and there were not any references to the act during the penalty phase of the trial. Also, the collateral bad act in this case apparently involved a pending charge for theft of property rather than a prior conviction for that offense.”). Accordingly, the circuit court did not err in allowing evidence of Mitchell’s possession of the knife while in jail to be admitted.
Moreover, even if the circuit court’s admission of the references to a knife was erroneous, any error was harmless. Here, Mitchell’s possession of the knife while in jail was not emphasized. More importantly, the State presented overwhelming evidence of Mitchell’s guilt including a video showing Mitchell committing the crime. See Ex parte Price, 725 So.2d 1063, 1072 (Ala.1998) (holding that the erroneous admission of evidence did not rise to the level of plain error because the State produced overwhelming evidence of guilt). Therefore, even if the circuit court erred in allowing evidence of Mitchell’s possession of the knife to be admitted, that error did not have an adverse impact on the jury’s deliberations and did not rise to the level of plain error. Ex parte Brown, 11 So.3d at 938; Rule 45A, Ala.R.App. P.
XVII.
Mitchell next argues that the circuit court’s admission of his telephone conversations violated his right to privacy under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United States and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., which “prohibits the interception of wire, oral, and electronic communica *1011 tions without a warrant.” Johnson v. State, 823 So.2d 1, 32 (Ala.Crim.App.2001). Specifically, Mitchell contends that because the telephone monitoring system at the Jefferson County jail was installed as a “phone management system” rather than a security measure, and because he did not consent to the recording of his personal telephone calls, he enjoyed a reasonable expectation of privacy as to all of his telephone calls made from the jail. This Court disagrees.
In Teat v. State, 636 So.2d 697, 699 (Ala.Crim.App.1993), this Court held that although inmates do not necessarily give up all constitutional rights during their incarceration, “there is no reasonable expectation of privacy in the telephone conversation of inmates at penal institutions.” See also United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir.1996) (holding that individuals who are incarcerated while awaiting trial do not have any expectation of privacy in outgoing telephone calls that are made on the jail telephones). Because Mitchell did not have a reasonable expectation of privacy during his telephone conversation, the admission of his telephone conversation did not violate any of his constitutional rights. Id. Consequently, this issue does not entitle Mitchell to relief.
XVIII.
Mitchell finally argues that the cumulative effect of all the errors requires reversal of his convictions and sentences of death. Specifically, he contends that “the accumulated errors have probably injuriously affected [his] substantial rights” and deprived him of a fair trial. (Mitchell’s brief, at 62.)
“As the Alabama Supreme Court has so succinctly stated, the cumulative-error rule is as follows: ‘[W]hile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, [Ala. RApp. P.,] if the accumulated errors have “probably injuriously affected substantial rights of the parties,” then the cumulative effect of the errors may require reversal.’ Ex parte Woods, 789 So.2d 941, 942 n. 1 (Ala.2001) (quoting Rule 45, Ala. R.App. P.).”
Brownfield v. State, 44 So.3d 1, 33 (Ala.Crim.App.2007).
Applying the standard set forth in Ex parte Woods, 789 So.2d 941 (Ala.2001), this Court has reviewed the alleged errors Mitchell has raised on appeal and has scrupulously searched the record for errors not raised on appeal. Rule 45A, Ala. R.App. P. After a thorough review of the record, this Court is convinced that no error, individually or cumulatively, entitles Mitchell to relief.
XIX.
Pursuant to § 13A-5-53, Ala.Code 1975, this Court is required to address the propriety of Mitchell’s convictions and sentences of death.[5] Mitchell was indicted for, and convicted of, four counts of capital murder — three counts of murder during the course of a robbery, see § 13A-5-40(a)(2), Aa.Code 1975, and one count of murder of two or more people pursuant to one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975.
The record does not reflect that Mitchell’s sentences of death were imposed as the result of the influence of passion, prej *1012 udice, or any other arbitrary factor. See § 18A-5-53(b)(l), Ala.Code 1975.
The circuit court correctly found that the aggravating circumstances outweighed the mitigating circumstances. In its February 7, 2007, sentencing order, the circuit court stated that it found five aggravating circumstances: 1) Mitchell committed the capital offense while under a sentence of imprisonment, § 13A-5-49(l), Ala.Code 1975; 2) Mitchell was previously convicted of another capital offense or felony involving the use or threat of violence, § 13A-5-49(2), Ala.Code 1975; 3) Mitchell committed the capital offense while he was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a robbery, § 13A-5^9(4), Ala. Code 1975; 4) the capital offenses committed were especially heinous, atrocious, or cruel when compared to other capital offenses, § 13A-5-49(8), Ala.Code 1975; and 5) Mitchell intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct, § 13A-5-49(9), Ala.Code 1975. The circuit court then considered each of the statutory mitigating circumstances and found that none applied in this case. However, the circuit court did find that several nonstatutory mitigating circumstances were applicable, including that: 1) Mitchell had been taken from his mother and placed in foster care at a very young age; 2) Mitchell was abused throughout his childhood; 3) Mitchell experienced numerous difficulties in school, which eventually caused him to be removed from his foster mother’s care; and 4) the jury recommended that Mitchell be sentenced to life in prison without the possibility of parole by a vote of 10-2. The circuit court’s sentencing order shows that it properly weighed the aggravating and mitigating circumstances and correctly sentenced Mitchell to death. The record supports the circuit court’s findings.
Section 13A. — 5—53(b)(2), Ala.Code 1975, requires this Court to reweigh the aggravating and mitigating circumstances in order to determine whether Mitchell’s death sentences are proper. After independently weighing the aggravating and mitigating circumstances, this Court finds that Mitchell’s sentences of death are appropriate.
As required by § 13A-5-53(b)(3), Ala.Code 1975, this Court must now determine whether Mitchell’s sentences are excessive or disproportionate when compared to the penalty imposed in similar cases. In this case, Mitchell was convicted of three counts of murder during a robbery and one count of murder of two or more people pursuant to one act or pursuant to one scheme or course of conduct. Sentences of death have been imposed for similar crimes throughout the State. See Byrd v. State, 78 So.3d 445, 458 (Ala.Crim.App.2009); Melson, 775 So.2d at 863; Washington v. State, 922 So.2d 145 (Ala.Crim.App.2005); and Rohitaille v. State, 971 So.2d 43, 76 (Ala.Crim.App.2005). Therefore, this Court finds that Mitchell’s death sentences are neither excessive nor disproportionate.
Finally, this Court has searched the entire record for any error that may have adversely affected Mitchell’s substantial rights and has found none.[6] See Rule 45A, Ala. R.App. P.
*1013 Accordingly, Mitchell’s convictions and sentences of death are affirmed.
AFFIRMED.
WISE, P.J., and WELCH, KELLUM, and MAIN, JJ., concur.

. Mitchell also argues that the circuit court violated Ring v. Arizona, 536 U.S. 584, 122 *986 S.Ct. 2428, 153 L.Ed.2d 556 (2002), when it found the especially heinous, atrocious, or cruel aggravating circumstance to exist. This argument is addressed in Section IV of this opinion.

. Because the jury's guilt-phase verdicts establish that it unanimously found beyond a reasonable doubt that two aggravating circumstances exist, the jury was not required to specify in the penalty phase which aggravating circumstances it found to apply to Mitchell crimes. See Brown v. State, 74 So.3d 984, 1035-36 (Ala.Crim.App.2010); Sneed v. State, 1 So.3d 104, 143 (Ala.Crim.App.2007).

. To the extent Mitchell argues that this Court should adopt the rule established in Tedder v. State, 322 So.2d 908, 910 (Fla.1975), this request was rejected by the Alabama Supreme Court in Ex parte Jackson, 836 So.2d 979, 989 n. 5 (Ala.2002).

. This Court notes that Mitchell does not argue and the record does not indicate that the mannequin heads were dissimilar to the heads of the victims. See Ivey v. State, 369 So.2d 1276, 1278 (Ala.Crim.App.1979)

. In Section XIII of his brief to this Court, Mitchell requested that this Court do a proportionality review pursuant to § 13A-5-53(b), Ala.Code 1975. Accordingly, this Court has chosen to address this issue in this section of our opinion.

. In Section XIV of his brief, Mitchell asks this Court to search the record for plain error. Specifically, "Mitchell prays that, if there are any issues he accidentally omitted that substantially affected his rights, this Court will address those issues as well.” (Mitchell’s brief, at 59.) This Court has searched the record for plain error and found none. Accordingly, Mitchell’s request is moot and will not be addressed in the body of this opinion.